**Reversed and Rendered (No. 14-18-00728-CV); Affirmed (No. 14-18-00793-CV); Reversed and Remanded (No. 14-18-00798-CV); and Memorandum Opinion filed August 20, 2020.**



In the

# 𝕱ourteenth Court of Appeals

---

**NO. 14-18-00728-CV**
**NO. 14-18-00793-CV**

---

**PETROBRAS AMERICA, INC. AND PETRÓLEO BRASILEIRO S.A.-PETROBRAS, Appellants**

**v.**

**ASTRA OIL TRADING NV AND ASTRA OIL COMPANY, LLC, Appellees**

---

**NO. 14-18-00798-CV**

---

**PETROBRAS AMERICA, INC.; PETRÓLEO BRASILEIRO S.A.-PETROBRAS; PASADENA REFINING SYSTEM, INC.; PRSI TRADING LLC; AND PRSI REAL PROPERTY HOLDINGS, LLC, Appellants**

**v.**

**ASTRA OIL TRADING NV; TRANSCOR ASTRA GROUP S.A.; ASTRA OIL COMPANY, LLC; ASTRA ENERGY HOLDINGS, INC.; ASTRA GP, INC.; ASTRA TRADECO LP, LLC; PASADENA REFINING HOLDING PARTNERSHIP; AOT BIS B.V.; CLIFFORD L. WINGET, III; ALBERTO**

**FEILHABER; KARI BURKE; JOHN T. HAMMER; CARLOS E. ORTIZ; THOMAS J. NIMBLEY; IRENEUSZ KOTULA; CHARLES L. DUNLAP; ERIC BLUTH; STEPHEN WADE; ROLF MUELLER; AND DANIEL BURLA, Appellees**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-43650**

---

**MEMORANDUM OPINION**

Stated simply, this case involves an often-contentious business relationship and the parties' attempt to settle their disputes. There are three related appeals. In appellate case number 14-18-00798-CV, Petrobras America, Inc.; Petróleo Brasileiro S.A.-Petrobras (Petrobras); Pasadena Refining System, Inc. (PRSI); PRSI Real Property Holdings, LLC; and PRSI Trading LLC (together, the Petrobras Plaintiffs) appeal the trial court's final judgment, signed June 12, 2018, in which it rendered final summary judgment in favor of Astra Oil Trading NV (AOT); Transcor Astra Group S.A.; Astra Oil Company, LLC (Astra Oil);[1] Astra Energy Holdings, Inc.; Astra GP, Inc.; Astra TradeCo LP, LLC; Pasadena Refining Holding Partnership (PRHP); AOT Bis B.V. (AOT BV); Clifford L. Winget, III; Alberto Feilhaber; Kari Burke; John T. Hammer; Carlos E. Ortiz; Thomas J. Nimbley; Ireneusz Kotula; Charles L. Dunlap; Eric Bluth; Stephen Wade; Rolf Mueller; and Daniel Burla[2] (together, the Astra Defendants). In appellate case number 14-18-00728-CV, Petrobras America and Petrobras appeal from the trial court's August 21, 2018 amended order granting supplemental relief enforcing the judgment in the form of an anti-suit injunction in favor of AOT and Astra Oil. And in appellate case

---

[1] The predecessor of Astra Oil Company, LLC is Astra Oil Company, Inc.

[2] A suggestion of death was filed regarding Burla. *See* Tex. R. App. P. 7.1(a)(1).

number 14-18-00793-CV, Petrobras America and Petrobras appeal from the trial court's August 28, 2018 amended order denying their motion to dismiss under the Texas Citizens Participation Act (TCPA)[3] in favor of AOT and Astra Oil.

In appellate case number 14-18-00728-CV, we reverse and render judgment ordering the amended order granting supplemental relief enforcing the judgment in the form of an anti-suit injunction dissolved. In appellate case number 14-18-00793-CV, we affirm the amended order denying the motion to dismiss under the TCPA. In appellate case number 14-18-00798-CV, we reverse the trial court's final judgment and remand with instructions for the trial court to render partial summary judgment in accordance with our judgment and conduct additional proceedings.

## I. BACKGROUND

In 2006, Petrobras, AOT, and Astra Oil Company, Inc. entered into the Stock Purchase and Sale Agreement and Limited Partnership Formation Agreement (2006 SPA) in connection with an oil refinery in Pasadena, Texas. Disputes arose, resulting in an arbitration and several lawsuits in state and federal courts.

In 2012, Petrobras America, Petrobras, PRSI, PRSI Real Property, PRSI Trading, AOT, Astra GP, Astra TradeCo, Astra Oil, Astra Energy, PHRP, and Transcor Astra entered into the Settlement Agreement and Mutual General Release (2012 Settlement). Among other provisions, the 2012 Settlement contains mutual releases and reliance disclaimers.

---

[3] All citations to the TCPA in this opinion are to the version in effect before the September 2019 amendments became effective. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961–64 (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011), *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, §§ 1–3, 5, 2013 Tex. Gen. Laws 2499, 2499–500 (the version at issue in this opinion); *see also* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–12, 2019 Tex. Gen. Laws 684, 684–87 (amending TCPA and providing that suit filed before amendments become effective "is governed by the law in effect immediately before that date").

In June 2016, the Petrobras Plaintiffs filed suit against the Astra Defendants in Harris County District Court. The Petrobras Plaintiffs alleged:

- declaratory relief;
- breach of fiduciary duty against Winget, Feilhaber, Hammer, Burke, Nimbley, Kotula, Dunlap, Bluth, and Wade;
- aiding and abetting breach of fiduciary duty against all Astra Defendants except AOT and Astra Oil;
- civil conspiracy as to breach of fiduciary duty against all Astra Defendants except AOT and Astra Oil;
- unjust enrichment/money had and received;
- common-law fraud;
- statutory fraud under Business and Commerce Code section 27.01;
- negligent misrepresentation;
- civil conspiracy as to "other claims";
- "exemplary and punitive damages";
- attorney's fees and costs; and
- joint-and-several liability of PRHP.[4]

AOT, Transcor Astra, Astra Oil, Astra Energy, Astra GP, Astra TradeCo, PRHP, AOT BV, Winget, Feilhaber, Burke, Hammer, Ortiz, Nimbley, Kotula, Dunlap, Bluth, and Wade filed declaratory-judgment counterclaims and sought attorney's fees.[5]

In July 2016, Petrobras America and Petrobras filed an original demand for

---

[4] The Petrobras Plaintiffs also alleged breach-of-contract claims against all Astra Defendants except Feilhaber, Mueller, and Burla and sought attorney's fees. The trial court severed those claims into cause number 2016-43650A.

[5] AOT and Astra Oil also alleged breach-of-contract claims against Petrobras America and Petrobras for pursuing the arbitration and sought attorney's fees but subsequently requested the trial court nonsuit without prejudice, which the trial court did on May 1, 2018.

arbitration against AOT and Astra Oil because they allegedly "engaged in bribery and corruption in connection with" the parties' 2006 SPA. They alleged that the parties agreed to arbitrate this dispute under the 2006 SPA, which contains an arbitration provision.[6] In September 2016, AOT and Astra Oil filed a motion to stay the arbitration in the trial court, which the trial court denied by written order signed October 26, 2016. Both the litigation and the arbitration proceeded.

In November 2017, AOT, Transcor Astra, Astra Oil, Astra Energy, Astra GP, Astra TradeCo, PRHP, AOT BV, Winget, Burke, Hammer, Ortiz, Nimbley, Kotula, Dunlap, Bluth, and Wade filed an amended motion for summary judgment, seeking dismissal of the claims in the Petrobras Plaintiffs' second amended petition and arguing that they were entitled to judgment on their declaratory-judgment counterclaims.[7] Feilhaber adopted this amended summary-judgment motion. The

---

[6] Article 15 of the 2006 SPA, entitled "Arbitration," in pertinent part provides:

15.01. Dispute Resolution. Any controversy or claim ("Claim"), whether based on contract, tort, statute or other legal or equitable theory (including but not limited to any claim of fraud, misrepresentation or fraudulent inducement or any question of validity or effect of this Agreement including this clause) arising out of or related to this Agreement (including any amendments or extensions), or the breach or termination thereof or as to any Related Agreements, shall be submitted to mediation and consultations between the Parties initiated upon the notice of any Party ("Mediation Notice"). In the event of failure of such mediation and consultations to settle such Claim in a manner acceptable to all Parties within thirty (30) days following the Mediation Notice, then any such Claim shall be settled by binding arbitration in accordance with this provision and the then current rules of American Arbitration Association ("AAA"). The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1–16, to the exclusion of any provision of state law inconsistent therewith or which would produce a different result, and Judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction.

[7] Attached to the amended summary-judgment motion were: a November 2017 affidavit by Beth Bivans Petronio; the 2012 Settlement; three draft settlement agreements; affidavits by Winget, Yvonne Roellin, Burke, Hammer, Ortiz, Nimbley, Kotula, Dunlap, Bluth, and Wade; transcripts from the depositions of Winget, Roellin, Burke, Hammer, Ortiz, Kotula, Dunlap, and Wade; and Petrobras America's and Petrobras's amended arbitration demand.

Petrobras Plaintiffs responded[8] and filed a third amended petition, adding the claims for breach of fiduciary duty against Winget, Feilhaber, Hammer, Burke, Nimbley, Kotula, Dunlap, Bluth, and Wade.

The trial court signed interlocutory orders granting the amended motions for summary judgment. AOT, Transcor Astra, Astra Oil, Astra Energy, Astra GP, Astra TradeCo, PRHP, AOT BV, Winget, Burke, Hammer, Ortiz, Nimbley, Kotula, Dunlap, Bluth, and Wade then filed a motion for summary judgment regarding the third amended petition. Feilhaber adopted this motion. Mueller and Burla also filed a conditional[9] motion for summary judgment regarding the third amended petition.

The trial court signed interlocutory orders granting the motions for summary judgment regarding the third amended petition. On June 12, 2018, the trial court signed a final judgment,[10] which ordered that the Petrobras Plaintiffs take nothing on their claims and granting AOT, Transcor Astra, Astra Oil, Astra Energy, Astra GP, Astra TradeCo, PRHP, AOT BV, Winget, Burke, Hammer, Ortiz, Nimbley, Kotula, Dunlap, Bluth, and Wade a declaratory judgment, ruling:

> a. the June 29, 2012 Settlement Agreement and Mutual General Release (the "Settlement Agreement") is valid, binding and

---

[8] Attached to the Petrobras Plaintiffs' response were: a December 2017 affidavit by William Katz; a translation of "collaboration agreement" by Nestor Cunat Cervero; a translation of a supplementary "cooperation agreement" by Cervero; translations of two "declarations" by Agosthilde Monaco de Carvalho; a translation of "statements" by Fernando Antonio Falcao Soares; a translation of a "statement of declaration" by Soares; witness statements in the arbitration by Winget, Feilhaber, and Hammer; the October 2017 award on jurisdiction issued by the tribunal; transcripts from the depositions of Bluth and Nimbley; and excerpts from the deposition of Feilhaber.

[9] Mueller's and Burla's summary-judgment motion was filed subject to their special appearances, which the trial court later denied by order signed March 27, 2018.

[10] The final judgment states: "All claims relating to all parties remaining in Cause No. 2016-43650 are determined and disposed of by this Final Judgment. All relief requested but not granted herein is denied. . . . This Final Judgment is appealable." The trial court rendered a final and appealable judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001).

enforceable in all respects;

b. the Petrobras Release given by the "Petrobras Parties" in Section 5.11 of the Settlement Agreement is valid, enforceable and binding; and

c. the Petrobras Release bars (i) the claims asserted in the proceeding for Breach of Fiduciary Duty[,] Aiding and Abetting Breach of Fiduciary Duty, and Civil Conspiracy–Breach of Fiduciary Duty; (ii) the claims sought to be asserted by Petrobras in the ICDR Arbitration commenced by Petrobras and styled *Petrobras America, Inc., et al. v. Astra Oil Trading NV, et al*[.], Cause No. 01-16-0003-1149; and (iii) any other claims arising out of or related to the 2006 SPA or the dealings between the parties.

The trial court separately ordered Feilhaber have a final declaratory judgment that the 2012 Settlement was valid, binding, and enforceable in all respects and the Petrobras Release was enforceable and binding. The trial court awarded these Astra Defendants various amounts of chapter-37 attorney's fees.

In July 2018, AOT and Astra Oil filed a motion for supplemental relief to enforce the judgment, requesting that the Petrobras parties be enjoined from further pursuit of the arbitration. The trial court granted this motion. AOT and Astra Oil subsequently filed a motion for an amended order granting supplemental relief to enforce the judgment. The Petrobras Plaintiffs filed a motion to dismiss under the TCPA. The trial court held a hearing, granting AOT's and Astra Oil's motion for an amended order granting supplemental relief enforcing the judgment and denying the Petrobras Plaintiffs' TCPA motion to dismiss. These three appeals—from the final judgment, the amended order granting supplemental relief in the form of an anti-suit injunction, and the order denying the TCPA motion—followed.

## II.   ANALYSIS

### A. No. 14-18-00798-CV

7

In their amended motions for summary judgment, the Astra Defendants raised the following grounds against the Petrobras Plaintiffs' claims:

- the claims for fraud, statutory fraud, and negligent misrepresentation based on alleged misrepresentations and failures to disclose the alleged 2006 bribe and the alleged settlement bribe offer during settlement discussions were barred by the declaimer-of-reliance provision in section 5.29 of the 2012 Settlement;

- the claims for fraud, statutory fraud, and negligent misrepresentation fail because the Astra Defendants had no duty during settlement discussions to make any disclosures about the alleged settlement bribe offer;

- the claims for declaratory judgment, unjust enrichment, civil conspiracy as to "other claims," joint-and-several liability of PRHP, punitive damages, and attorney's fees also fail because they are derivative of the underlying misrepresentation claims; and

- the claims for aiding and abetting breach of fiduciary duty and civil conspiracy as to breach of fiduciary duty were barred by the Petrobras Release.

In addition, the Astra Defendants (except for Mueller and Burla) argued they were entitled to declaratory judgment on their claims for "declaratory judgment confirming the validity and enforceability of the Petrobras Release and that the Petrobras Release bars any claims by Petrobras arising out of or relating to the 2006 SPA or any of the parties' prior dealings."

The Petrobras Plaintiffs argued in response that the reliance disclaimer did not apply to the failure to disclose the 2006 bribery scheme; the reliance disclaimer did not bar their claims considering the Astra Defendants' criminal conduct and the totality of the circumstances; and the release expressly excluded the Petrobras Plaintiffs' claims. They further argued that the Astra Defendants were not entitled to summary judgment on their declaratory-judgment counterclaims.

8

The Astra Defendants' motions for summary judgment regarding the third amended petition incorporated all the reasons and evidence from the amended summary-judgment motions. In addition, the Astra Defendants argued that the new claims for breach of fiduciary duty were "barred by the Petrobras Release." The Petrobras Plaintiffs argued in response that, even if enforceable, the reliance disclaimer did not apply to nine of their claims; the broad exception in the release preserved their non-reliance-based claims; the individual defendants were not entitled to summary judgment in their individual capacities on any claims; the Astra Defendants were not entitled to declaratory relief that affected the arbitration; and the Astra Defendants were not entitled to an award of attorney's fees or costs.

## 1. Summary judgment dismissing the Petrobras Plaintiffs' claims

In their first issue, broken into sub-issues, the Petrobras Plaintiffs argue that the trial court erred in granting the motions for summary judgment on their claims in favor of the Astra Defendants. Our review of a summary judgment is de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Because the trial court's summary-judgment orders do not specify the ground or grounds upon which they were granted, we uphold the court's judgment if properly supported by any ground alleged in the motions. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To be entitled to traditional summary judgment, a movant must establish there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to

9

summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

### a. The Petrobras release

We first consider the Petrobras Plaintiffs' first sub-issue regarding the Astra Defendants' summary-judgment ground of release. The release at issue provides:

<u>Release of the Astra Parties</u>

5.11 On the Effective Date, and once payment of the amount set forth in Section 5.02 is made and except as otherwise provided in Sections 5.03 and 5.06 and this Section 5.11, the Petrobras Parties generally release and forever discharge the Astra Parties from any and all claims, demands, and causes of action of whatever kind or character which the Petrobras Parties have, or may have in the future, based on any acts or omissions, whether known or unknown, that have occurred on or before the Effective Date, including, without limitation: (a) any claim that was or could have been asserted in, that grew out of, or that was in any way connected with, the Disputes; (b) any claim arising out of or related to the 2006 SPA, including without limitation, any claims related to the indemnities, representations, warranties, covenants and purchase price adjustments provided for therein; (c) any claim arising out of, or connected in any way with, any environmental issues of any kind at the refinery owned and operated by PRSI; (d) any claim growing out of, or connected in any way with, the Astra Parties' dealings with the Petrobras Parties; (e) any claim based in whole or in part on the activities of the Astra Parties that may have been alleged to violate any laws or administrative rules of the United States, or any state or subdivision of the United States, or any foreign country or subdivision of any foreign country, (f) any claim based in whole or in part on the activities of the Astra Parties that may have been alleged to create any right or action for recovery for damages or injunction, under any federal or state statutes or administrative rule or other judicial decisions or the common law of the United States, or any state or subdivision of the United States, or any foreign country or subdivision of any foreign country; (g) any claim based in whole or in part on the

activities of the Astra Parties that may have been alleged to create or contribute to any other right, claim or cause of action of the Petrobras Parties against the Astra Parties; and (h) claims for punitive or exemplary damages, attorney's fees, costs, or penalties (collectively, the "**Petrobras Claims**"). This release is to be construed as the broadest type of general release and is intended to constitute a general release by the Petrobras Parties of the Astra Parties of the Petrobras Claims, whether known or unknown. Notwithstanding anything to the contrary, the Petrobras Claims shall not include any and all claims, demands, and causes of action arising out of, related to, or connected in any way with the alleged breach, enforcement, or interpretation of this Settlement Agreement or the Common Interest Agreement.

Release is an affirmative defense under the Texas Rules of Civil Procedure. Tex. R. Civ. P. 94. A release is a writing which provides that a duty or obligation owed to one party to the release is discharged immediately or upon the occurrence of a condition. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692 (Tex. 2000); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (op. on reh'g). A release of a claim or cause of action extinguishes the claim or cause of action. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). Like any other agreement, a release is a contract subject to the rules of contract construction. *Baty*, 63 S.W.3d at 848; *see Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). When construing a contract, the court must give effect to the true intentions of the parties as expressed in the written instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996); *Baty*, 63 S.W.3d at 848.

The contract must be read as whole, not by "isolating a certain phrase, sentence, or section of the agreement." *Baty*, 63 S.W.3d at 848. Rather, the court must examine the entire contract in an effort to harmonize and give effect to all of

11

its provisions so that none are rendered meaningless and no single provision controls. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). The language is to be given its plain grammatical meaning unless doing so would defeat the intent of the parties. *Baty*, 63 S.W.3d at 848. A contract is unambiguous if it can be given a definite legal meaning. *Webster*, 128 S.W.3d at 229. The interpretation of an unambiguous contract is a matter of law to be determined by the court. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). In construing a contract, the court may not rewrite it or add to its language. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003).

To effectively release a claim, the releasing instrument must mention the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991); *Baty*, 63 S.W.3d at 848. Claims that are not clearly within the subject matter of the release are not discharged, even if they exist when the release is executed. *Brady*, 811 S.W.2d at 938; *Baty*, 63 S.W.3d at 848. It is not necessary, however, that the parties anticipate and identify every potential cause of action relating to the subject matter of the release. *Keck*, 20 S.W.3d at 698; *Baty*, 63 S.W.3d at 848. Although releases generally contemplate claims existing at the time of execution, a valid release may also encompass unknown claims and future damages. *Keck*, 20 S.W.3d at 698; *Baty*, 63 S.W.3d at 848. General categorical release clauses are narrowly construed. *Brady*, 811 S.W.2d at 938.

In their summary-judgment motions, the Astra Defendants argued that the Petrobras Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty fell within the release as claims "arising out of or related to the 2006 SPA"; "growing out of, or connected in any way with, the Astra Parties' dealings with the Petrobras Parties"; "based . . . on the activities of the Astra Parties that may have been alleged to violate any laws";

12

and "based . . . on the activities of the Astra Parties that may have been alleged to create any right or action [for Petrobras]."

The trial court granted the motions for summary judgment in favor of the Astra Defendants on the Petrobras Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty. To show their entitlement to judgment as a matter of law, the Astra Defendants had to conclusively establish that these claims were not viable because they were barred by the release. *See* Tex. R. Civ. P. 166a(c). We conclude that the Astra Defendants did not meet their burden and therefore conclude that the trial court erred by granting their motions for summary judgment on these claims.

The Petrobras Plaintiffs contend that the trial court erred because all their "claims fall outside the scope of the Release." As they did in the trial court, they point to the carve-out language in section 5.11: "Notwithstanding anything to the contrary, the Petrobras Claims shall not include any and all claims, demands, and causes of action arising out of, related to, or connected in any way with the alleged breach, enforcement, or interpretation of this Settlement Agreement." They argue that this language is subject to a broad, inclusive construction.

On appeal, the Astra Defendants point out that they only raised the release to defeat the Petrobras Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty. They argue that "[t]he only reasonable interpretation of the Release is exactly what it says, namely, that it applies to the 2006 SPA Claims," which according to the Astra Defendants were "based on . . . alleged misconduct relating to the 2006 SPA."[11]

---

[11] The Astra Defendants did not mention or address the carve-out portion of the release in their summary-judgment motions.

No party argues that the release is ambiguous. The release states that it "is to be construed as the broadest type of general release and is intended to constitute a general release . . . of the Petrobras Claims, whether known or unknown." The term "Petrobras Claims" is defined to include "any and all claims, demands, and causes of action of whatever kind or character which the Petrobras Parties have, or may have in the future, based on any acts or omissions, whether known or unknown, that have occurred on or before the Effective Date,"[12] including "any claim arising out of or related to the 2006 SPA." But the release also includes an express carve-out, which states that "[n]otwithstanding anything to the contrary, the Petrobras Claims shall not include any and all claims, demands, and causes of action arising out of, related to, or connected in any way with the alleged breach, enforcement, or interpretation of this Settlement Agreement."[13]

---

[12] The release goes on to "includ[e], without limitation" and define the following as the "Petrobras Claims":

> (a) any claim that was or could have been asserted in, that grew out of, or that was in any way connected with, the Disputes; (b) any claim arising out of or related to the 2006 SPA, including without limitation, any claims related to the indemnities, representations, warranties, covenants and purchase price adjustments provided for therein; (c) any claim arising out of, or connected in any way with, any environmental issues of any kind at the refinery owned and operated by PRSI; (d) any claim growing out of, or connected in any way with, the Astra Parties' dealings with the Petrobras Parties; (e) any claim based in whole or in part on the activities of the Astra Parties that may have been alleged to violate any laws or administrative rules of the United States, or any state or subdivision of the United States, or any foreign country or subdivision of any foreign country, (f) any claim based in whole or in part on the activities of the Astra Parties that may have been alleged to create any right or action for recovery for damages or injunction, under any federal or state statutes or administrative rule or other judicial decisions or the common law of the United States, or any state or subdivision of the United States, or any foreign country or subdivision of any foreign country; (g) any claim based in whole or in part on the activities of the Astra Parties that may have been alleged to create or contribute to any other right, claim or cause of action of the Petrobras Parties against the Astra Parties; and (h) claims for punitive or exemplary damages, attorney's fees, costs, or penalties.

[13] The same carve-out language is used in section 5.09 of the 2012 Settlement, which

14

"When parties use the clause 'notwithstanding anything to the contrary contained herein' in a paragraph of their contract, they contemplate the possibility that other parts of their contract may conflict with that paragraph, and they agree that this paragraph must be given effect regardless of any contrary provisions of the contract." *Helmerich & Payne Int'l Drilling Co. v. Swift Energy Co.*, 180 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also Horseshoe Bay Resort, Ltd. v. CRVI CDP Portfolio, LLC*, 415 S.W.3d 370, 384 (Tex. App.—Eastland 2013, no pet.) (describing "notwithstanding" and "despite" as "[s]uperordinating language" that "shows which provision prevails in the event of a clash"). In addition, we ordinarily read the clause "arising out of, related to, or connected in any way with" broadly. *See Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 19–20 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("The use of such broad language ["arising out of or in connection with"] evidences the parties' intent to be inclusive rather than exclusive."); *Grant Prideco, Inc. v. Empeiria Conner L.L.C.*, 463 S.W.3d 157, 161–62 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("The words 'arising out of' have been interpreted by courts as broad, general, and comprehensive terms effecting broad coverage in that the words are understood to mean originating from, having its origin in, growing out of, or flowing from." (internal quotation marks omitted)).

The question therefore is, keeping in mind that we construe general categorical releases narrowly and must give effect to the "notwithstanding" carve-out, even if the Petrobras Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty otherwise fit within the release, can these claims, applying Texas's fair-notice

---

concerns the release of the "Astra Claims."

15

pleading standard,[14] be broadly and reasonably categorized as growing out of or flowing from the alleged breach,[15] enforcement,[16] or interpretation[17] of the 2012 Settlement such that they fall within the exception? We conclude that, as pleaded by the Petrobras Plaintiffs, they can.

Contrary to the Astra Defendants' assertion, the Petrobras Plaintiffs did not solely limit their claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty to the Astra Defendants' "alleged misconduct relating to the 2006 SPA." In their third amended petition, the Petrobras Plaintiffs alleged that certain defendants[18] owed them fiduciary duties by virtue of their director and officer roles in PRSI, PRSI Trading, or both. While the Petrobras Plaintiffs did allege that these defendants breached their fiduciary duties by paying about $15 million in bribes in connection with the initial purchase of 50% of PRSI, the Petrobras Plaintiffs further alleged that these defendants breached their fiduciary duties by offering to pay between $80 and $100 million in bribes to reach a settlement "during the ongoing litigation that culminated in the" 2012 Settlement and by failing to disclose such facts while the 2012 Settlement was being negotiated and signed. In addition, the Petrobras Plaintiffs alleged that these defendants were

---

[14] *See Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982) ("A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim.").

[15] "Breach" means "[a] violation or infraction of a law, obligation, or agreement, esp. of an official duty or a legal obligation, whether by neglect, refusal, resistance, or inaction." Black's Law Dictionary (11th ed. 2019).

[16] "Enforcement" means "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement." Black's Law Dictionary (11th ed. 2019).

[17] "Interpretation" means "[t]he ascertainment of a text's meaning; specif., the determination of how a text most fittingly applies to particular facts." Black's Law Dictionary (11th ed. 2019).

[18] Again, these defendants were Winget, Feilhaber, Hammer, Burke, Nimbley, Kotula, Dunlap, Bluth, and Wade.

16

knowing participants in the breaches, fully liable, and had a personal financial interest in the 2012 Settlement through their respective ownership interests in PRHP, which received at least $135 million of the funds paid under the agreement. In addition, the Petrobras Plaintiffs alleged that the Astra Defendants[19] knew of the fiduciary relationships owed by certain defendants, knew they were participating in breaches of those duties, and therefore aided and abetted the breaches. Finally, the Petrobras Plaintiffs alleged that the Astra Defendants[20] agreed and/or conspired with each other and possibly third parties in connection with aiding and abetting the breaches of fiduciary duties by performing acts, making statements, and concealing information in furtherance of such conspiracy. The Petrobras Plaintiffs sought any and all legal and equitable remedies, including damages, disgorgement, rescission, restitution, and imposition of a constructive trust.

To the extent that the Petrobras Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty are alleged to involve acts or omissions of the Astra Defendants "in connection with the initial purchase of 50% of PRSI," they are properly barred by the general release as claims "arising out of or related to the 2006 SPA." However, the Petrobras Plaintiffs also alleged claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty involving acts or omissions of the Astra Defendants in connection with the negotiation and signing of the 2012 Settlement and sought to limit or undo payments made pursuant to that agreement. We conclude that these claims reasonably fall within the inclusive, "superordinating" carve-out language of the release as claims "arising out of, related to, or connected in any way with the alleged breach, enforcement, or interpretation

---

[19] Again, these defendants did not include AOT or Astra Oil.

[20] *See supra* note 19.

of this Settlement Agreement" and therefore are not barred by the release.[21]

Because the Astra Defendants did not conclusively establish that all the Petrobras Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty against them fall clearly within the scope of the release, we conclude that the trial court erred by granting the motions for summary judgment, dismissing all these claims with prejudice, and declaring that all these claims were barred by the release.

Accordingly, we sustain this portion of the Petrobras Plaintiffs' first issue.

### b.  The disclaimer of reliance

We next consider the Petrobras Plaintiffs' second and third sub-issues regarding the Astra Defendants' summary-judgment ground of disclaimer of reliance. The disclaimer of reliance at issue provides:

> 5.29  **EACH PARTY EXPRESSLY WARRANTS THAT IT HAS CAREFULLY READ THIS SETTLEMENT AGREEMENT AND ANY EXHIBITS ATTACHED TO IT, UNDERSTANDS THEIR CONTENTS, AND SIGNS THIS SETTLEMENT AGREEMENT AS ITS OWN FREE ACT. EACH PARTY EXPRESSLY WARRANTS THAT NO PROMISE OR AGREEMENT WHICH IS NOT HEREIN EXPRESSED HAS BEEN MADE TO IT IN EXECUTING THIS SETTLEMENT AGREEMENT, AND THAT IT IS NOT RELYING UPON ANY STATEMENT OR REPRESENTATION OF ANY AGENT OF THE OPPOSING PARTIES BEING RELEASED IN THIS**

---

[21] We note that other sections of the 2012 Settlement tend to reinforce the inclusive nature of the carve-out, including the forum-selection provision in section 5.20 governing where the parties agreed to file "any dispute arising out of or related to Settlement Agreement" and where they irrevocably submitted to jurisdiction "for any legal proceeding arising out of or related to this Agreement," as well as the provision in section 5.22 by which the parties waived their right to a jury trial "in respect to any litigation, action, suit, or proceeding (whether at law or equity) based on, arising out of, related to, or connected in any way with this Settlement Agreement, whether arising in contract, tort or otherwise and whether asserted by way of complaint, answer, cross-claim, counterclaim, affirmative defense or otherwise."

**SETTLEMENT AGREEMENT. EACH PARTY IS RELYING ON ITS OWN JUDGMENT, AND EACH PARTY HAS BEEN REPRESENTED BY LEGAL COUNSEL IN THIS MATTER. EACH PARTY EXPRESSLY WARRANTS THAT ITS RESPECTIVE LEGAL COUNSEL HAS READ AND EXPLAINED THE ENTIRE CONTENTS OF THIS SETTLEMENT AGREEMENT IN FULL, AS WELL AS THE LEGAL CONSEQUENCES OF IT.**

A contract is subject to avoidance on the ground of fraudulent inducement. *Williams*, 789 S.W.2d at 264. However, "a disclaimer of reliance may conclusively negate the element of reliance, which is essential to a fraudulent inducement claim." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179–80 (Tex. 1997) (concluding that disclaimer-of-reliance clause effectively precluded claim for fraudulent inducement).

The question of whether an adequate disclaimer of reliance exists is a matter of law, which we review de novo. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 (Tex. 2008). In *Forest Oil*, the Supreme Court of Texas applied *Schlumberger* to uphold a disclaimer of reliance in a settlement agreement that was intended to resolve both future and past claims. *Id.* at 58. The *Forest Oil* court "clarified" the factors that guided its reasoning:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute;
>
> (2) the complaining party was represented by counsel;
>
> (3) the parties dealt with each other in an arm's length transaction;
>
> (4) the parties were knowledgeable in business matters; and
>
> (5) the release language was clear.

268 S.W.3d at 60 (as in *Schlumberger*, "[c]ourts must always examine the contract itself and the totality of the surrounding circumstances when determining if a

waiver-of-reliance provision is binding"); *see also Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229–30 (Tex. 2019) (applying same factors). "[T]he five *Forest Oil* considerations a[re] 'facts . . . that guide[] our reasoning' and 'factors'—not elements that all must be established before a disclaimer of reliance is enforceable." *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 333 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (quoting *Forest Oil*, 268 S.W.3d at 60).

In their summary-judgment motions, the Astra Defendants argued that the Petrobras Plaintiffs' claims for fraud, statutory fraud, and negligent misrepresentation should be dismissed because they were barred as a matter of law by the disclaimer of reliance in section 5.29 of the 2012 Settlement. They argued that justifiable reliance was an essential element of these three claims, and the disclaimer conclusively negated any claim of reliance pursuant to the *Schlumberger* doctrine. In addition, they argued that because the Petrobras Plaintiffs' remaining "claims"—for declaratory relief, unjust enrichment, civil conspiracy as to "other claims," joint-and-several liability of PHRP, punitive damages, and attorney's fees—required proof of the underlying misrepresentation claims, they also had to be dismissed.

The trial court granted the motions for summary judgment in favor of the Astra Defendants on the Petrobras Plaintiffs' claims for declaratory relief, unjust enrichment/money had and received, common-law fraud, statutory fraud, negligent misrepresentation, civil conspiracy as to "other claims," exemplary damages, attorney's fees and costs, and joint-and-several liability of PRHP. To show their entitlement to judgment as a matter of law, the Astra Defendants had to conclusively establish that these claims of the Petrobras Plaintiffs were not viable either because the claims were barred by the reliance disclaimer or were derivative claims. *See* Tex. R. Civ. P. 166a(c).

In their second sub-issue, the Petrobras Plaintiffs argue that the reliance disclaimer cannot affect nine of their claims because reliance is not an element of those claims: namely, declaratory relief, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy as to breach of fiduciary duty, unjust enrichment/money had and received, civil conspiracy as to "other claims," exemplary damages, attorney's fees and costs, and joint-and-several liability of PHRP. In their third sub-issue, the Petrobras Plaintiffs argue that even on the three claims for which reliance is an element, the reliance disclaimer does not entitle the Astra Defendants to summary judgment because it is unenforceable under *Schlumberger*. They also contend that their claims are based on omissions, not affirmative misrepresentations, so the reliance disclaimer does not apply. Finally, they assert that the reliance disclaimer should not be enforced due to "the surrounding facts and circumstances."

The Astra Defendants attack the Petrobras Plaintiffs' second sub-issue as a "straw man" argument because they did not seek summary judgment on the nine other "claims" based on the reliance disclaimer. As to the third sub-issue, the Astra Defendants argue that the trial court properly applied the *Schlumberger* doctrine when all the factors favor enforcement of the reliance disclaimer; the disclaimer also covers nondisclosure claims; and this court should not create any public-policy exception to the *Schlumberger* doctrine.

In their third amended petition, with regard to their claims for common-law fraud, statutory fraud, and negligent misrepresentation, the Petrobras Plaintiffs alleged that the Astra Defendants made false "representations and/or omissions" either with knowledge of their falsity, or negligently, to induce the Petrobras Plaintiffs to enter into the 2012 Settlement. Significantly, with regard to all three claims, the Petrobras Plaintiffs alleged that they "reasonably relied to their detriment

21

on the omissions, misstatements [false statements], and/or misrepresentations" made by the Astra Defendants.

The Petrobras Plaintiffs do not dispute that reliance is an essential element of common-law fraud, statutory fraud, and negligent misrepresentation. They also do not dispute—and the summary-judgment record confirms—that certain of the *Forest Oil* factors clearly are present here: the disclaimer language was clear and unequivocal, the terms of the contract were negotiated and not boilerplate, they were represented by counsel, and the parties are knowledgeable in business matters. *See* 268 S.W.3d at 60. Instead, the Petrobras Plaintiffs argue that two factors weigh against enforcing the disclaimer.

We turn first to the Petrobras Plaintiffs' third sub-issue.

*Whether during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute*

The Petrobras Plaintiffs first argue that the matter in dispute was not specifically negotiated, *i.e.*, the parties did not specifically discuss the 2006 bribery scheme and the Astra Defendants instead concealed it while they were negotiating the 2012 Settlement. The Petrobras Plaintiffs point to evidence that the parties did not have "specific discussions" about the 2006 SPA or "any potential bribery and corruption related to the earlier 2006 transaction." The Astra Defendants respond that the parties did not need to specifically discuss the very facts of the alleged 2006 bribery scheme to meet this factor, and that "Petrobras was fully aware that it was disclaiming reliance on any representations or disclosures relating to the mutual releases, including the release of any claims relating to the to 2006 SPA."

The *Schlumberger* doctrine properly can be applied whether the settlement agreement at issue involves one known, current dispute, or older or future disputes, whether known or unknown. *See Forest Oil*, 268 S.W.3d at 57–58 (applying

22

*Schlumberger* to parties' settlement and rejecting plaintiff's argument that "the disclaimer [was] insufficiently specific to be applied to every representation made").

Our court considered and rejected an argument similar to that made by the Petrobras Plaintiffs in *Texas Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 394 S.W.3d 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). There, we held that although the plaintiff attempting to bring a fraudulent-inducement claim was unaware of the defendant's particular potential transaction to sell certain oil and gas prospects (which subsequently took place) when it executed a settlement agreement to terminate their business relationship relating to developing prospects, this factor was met and the fraudulent-inducement release at issue was enforceable under circumstances wherein the parties had discussed the broader "issue" of whether the plaintiff had interests in various prospects. *Id.* at 773, 778. In so holding, we explained:

> We acknowledge that the present case seems to present an atypical situation because the extra-contractual concealments forming the grounds for Frankel's fraudulent-inducement claim are the same concealments forming, in part, the grounds for its breach-of-fiduciary-duties claim. Thus, if the parties had discussed the exact grounds on which Frankel based its present breach-of-fiduciary-duties claim, there likely would not have been any fraudulent inducement because Frankel would not have executed the Settlement Agreement if it had known of the Probe transaction or at least that GTP was concealing material information. However, the *Forest Oil* court did not opine that the parties must have discussed the exact grounds that form the basis of the subsequent dispute, in order to satisfy this factor. *See generally*, 268 S.W.3d at 58. In fact, Frankel released all "known and unknown" claims "which have accrued or may ever accrue to [Frankel] . . . ."

*Tex. Standard Oil*, 394 S.W.3d at 772.

Our court again considered and rejected a similar argument in *McLernon*.

23

There, we held that a former executive's assertion that he was fraudulently induced to enter into a severance agreement was barred by a disclaimer of reliance. 347 S.W.3d at 330. In doing so, we rejected the executive's argument that the parties did not discuss the fraud claim (based on misrepresentations concerning repayment of a loan to purchase stock) before execution of the severance agreement. *Id.* at 331. We explained:

> [T]he relevant fact under the first guideline is that the parties discussed McLernon's obligation to repay the loan and execution of the replacement note because this issue is the topic of the present dispute. The inquiry under this guideline cannot be whether they discussed the fraudulent-inducement claim or whether he was aware of the misrepresentations at issue. Axiomatically, if contracting parties discussed a fraudulent-inducement claim and the complaining party was aware of the material misrepresentations before signing the agreement, there would be no such fraud claim because he could not have been deceived into signing the agreement. The significant point with respect to the *Forest Oil* factors is that McLernon was aware of Dynegy's specific representations concerning the topic of the present dispute yet elected to disclaim reliance on those representations.

*McLernon*, 347 S.W.3d at 331.

In other words, we do not require that the parties discussed the specific factual basis for the "fraud" concern to meet this portion of the *Forest Oil* factor.[22] The relevant inquiry is not whether the parties specifically discussed, the Petrobras Plaintiffs were aware of, or the Astra Defendants disclosed the facts of the alleged 2006 bribery scheme, which surely would have given the Petrobras Plaintiffs a reason not to execute the 2012 Settlement (and so they would not be bringing any fraudulent-inducement claims), but rather whether the parties specifically discussed

---

[22] The Petrobras Plaintiffs do not address this court's holdings in *Texas Standard Oil* and *McLernon* interpreting this factor. Nor do the cases relied on by the Petrobras Plaintiffs control our analysis or otherwise persuade us.

24

the broader issue or topic of the existence and treatment of older claims, whether known or unknown, such as those related to the 2006 SPA.

The summary-judgment record includes testimony by Winget, who participated in the negotiations and signed the 2012 Settlement for the Astra Defendants, that the parties discussed their intent for the agreement to be a "[t]otal adios, you know, with the complete general release . . . absolute, complete never come back, no matter what happened in the past." According to Winget, the 2012 Settlement "was—in [his] nonlawyer language—let's say capped by a mutual— there's a word for it. But it basically means no more litigation. That's—mutual disclaimer release, excuse me. And, you know, that was the end of it. Like we'd never be here today . . . was the intent." The record also includes a comparison of drafts of the 2012 Settlement tending to demonstrate that the mutual release provisions specifically were negotiated among the parties and ultimately revised to expressly include "any claim arising out of or related to the 2006 SPA." In addition, in his affidavit, counsel for the Petrobras Plaintiffs acknowledged that the parties, during negotiations, specifically discussed releasing claims "related to the 2006 purchase of 50% of PRSI" (albeit at the Astra Defendants' insistence). Under these circumstances, we conclude the summary-judgment evidence sufficiently supports that during negotiations the parties specifically discussed the issue which has become the topic of their subsequent dispute.

*Whether the parties dealt with each other in an arm's-length transaction*

Next, the Petrobras Plaintiffs argue that the 2012 Settlement was not an arm's-length transaction because certain of the Astra Defendants owed fiduciary duties to PRSI, PRSI's shareholders Petrobras and Petrobras America, and PRSI Trading. They contend that such duties to disclose were owed before, during, and after the settlement negotiations, and therefore as a matter of law the 2012 Settlement

25

cannot have been an arm's-length transaction. According to the Astra Defendants, even assuming certain of them owed fiduciary duties to the Petrobras Plaintiffs during the settlement negotiations, "that would not militate against enforcement of the disclaimer."

*Schlumberger* did not address this particular situation; there, the court concluded there was no evidence that the parties were fiduciaries either as partners or based on a confidential relationship. *See* 959 S.W.2d at 175–77. However, our court in *Texas Standard Oil* directly considered whether a fraudulent-inducement release in a settlement was unenforceable as a matter of law assuming the negotiating parties were fiduciaries. 394 S.W.3d at 773–78.[23] There, as here, the plaintiff argued essentially that "the mere existence of [a] duty to disclose automatically vitiated any fraudulent-inducement release." *Id.* at 774. We rejected that either *Schlumberger* or *Forest Oil* stood for such a proposition and refused to adopt such a blanket rule, explaining:

> [E]ven if execution of the Settlement Agreement was not entirely an arm's length transaction because GTP still owed Frankel some fiduciary duty to disclose, existence of such fiduciary relationship did not automatically vitiate the fraudulent-inducement release. . . . Axiomatically, fiduciaries, like any other business associates, might wish to ensure finality to their disputes. Thus, their expressed intent to ensure finality, via a fraudulent-inducement release or disclaimer of reliance, as well as their freedom to contract, should be accorded the same respect as the intent of other parties. *See* [*Forest Oil*, 268 S.W.3d at 60–61].
>
> . . . .
>
> Accordingly, we disagree with Frankel's suggestion that a fraudulent-inducement release between fiduciaries is *per se* unenforceable simply because they generally owed each other a duty

---

[23] Again, the Petrobras Plaintiffs do not discuss *Texas Standard Oil*.

26

to disclose.

*Tex. Standard Oil*, 394 S.W.3d at 774–76.

Under *Texas Standard Oil*, "the pertinent inquiry is whether, considering all of the circumstances, existence of the fiduciary relationship vitiates a conclusion that" the Petrobras Plaintiffs bindingly disclaimed their reliance. *See id.* at 776. There, when all the other *Forest Oil* factors were met, we concluded:

> These facts negate any notion that Frankel was somehow dependent on GTP as its fiduciary to explain the fraudulent-inducement release or that Frankel's ability to understand the release was inhibited due to the fiduciary relationship. Likewise, these facts demonstrate that, irrespective of any fiduciary relationship, Frankel voluntarily assented to the fraudulent-inducement release.

*Tex. Standard Oil*, 394 S.W.3d at 776. In doing so, we also considered it significant that the plaintiff "was afforded the opportunity to question for itself GTP's motives in wishing to terminate FGP and own prospects free and clear of Frankel and whether GTP was concealing information regarding its plans for the prospects; yet, Frankel chose to execute the fraudulent-inducement release." *Id.* (citing *Forest Oil*, 268 S.W.3d at 58). As an additional factor, we also considered that the parties "were adverse litigants when they executed the Settlement Agreement." *Id.* at 776–77. In addition, "the fact the Settlement Agreement contains mutual fraudulent-inducement releases supports a conclusion that each party knew the other party was protecting its own interests." *Id.* at 777. Finally, we considered the "additional factor mentioned in *Forest Oil*": that the settlement agreement at issue "terminated the parties' relationship." *Tex. Standard Oil*, 394 S.W.3d at 777; *see Forest Oil*, 268 S.W.3d at 58 ("A 'once and for all' settlement may constitute an *additional* factor urging rejection of fraud-based claims . . . .").

Here, we already have concluded that all the other *Forest Oil* factors were

27

met. As discussed above, the Petrobras Plaintiffs (represented by counsel and sophisticated in business affairs) were aware of and specifically discussed the release of claims related to the 2006 SPA. The parties were longtime adverse litigants, and the Petrobras Plaintiffs understood that the Astra Defendants were representing their own interests in negotiating the reliance disclaimer and that the Petrobras Plaintiffs needed to evaluate for themselves whether the provision was in their best interests. That the disclaimer of reliance was mutual supports the conclusion that all the parties knew they needed to protect their own interests. Additionally, the parties entered the 2012 Settlement intending that it be the "absolute" and "complete" "end of" their disputes. In sum, considering all the *Forest Oil* factors, we conclude that, "despite any fiduciary relationship, sophisticated parties, represented by their own counsel, negotiated and voluntarily agreed to clear and unequivocal, mutual provisions" disclaiming any reliance on any representation of the opposing parties in executing the 2012 Settlement. *See Tex. Standard Oil*, 394 S.W.3d at 777.

*The Petrobras Plaintiffs' additional arguments*

The Petrobras Plaintiffs further argue their reliance-based claims are based on omissions that are not mirror images of any affirmative misrepresentations. Thus, by its terms, the reliance disclaimer does not apply to the Astra Defendants' failure to disclose their bribery scheme. The Astra Defendants respond that as in *Schlumberger* the Petrobras Plaintiffs' omission or nondisclosure allegations are simply the converse of the alleged affirmative misrepresentations and also are covered by the reliance disclaimer.

The *Schlumberger* court considered and rejected the plaintiffs' argument that even if the reliance disclaimer at issue precluded fraudulent-inducement claims based on affirmative representations, it did not preclude fraud by nondisclosure "because it does not disclaim reliance on Schlumberger's non-disclosures." 959

28

S.W.2d at 181–82 (agreeing with defendant and concluding that nondisclosures were covered: "In short, had Schlumberger disclosed all the true facts about the project, it would not have misrepresented the truth.").

Here, in their third amended petition, the Petrobras Plaintiffs alleged the Astra Defendants both "misrepresented and/or omitted facts concerning their criminal and fraudulent conduct, including their payment of approximately $15 million in bribes in connection with the initial purchase of 50% of PRSI and their offer to pay between $80 million and $100 million in bribes to 'solve the problem' between the parties and reach a settlement." They further alleged that the Astra Defendants made "voluntary or partial disclosures about the negotiation of the initial purchase of 50% of PRSI, while affirmatively concealing their payment of $15 million in bribes and conveying the false impression that the negotiation was a legitimate arm's-length transaction." Under these circumstances, we conclude that *Schlumberger* applies. *See id.*

Finally, the Petrobras Plaintiffs contend that "the summary judgment is erroneous because the surrounding facts and circumstances do not justify enforcing the Reliance Disclaimer" to insulate the Astra Defendants "from the consequences of their criminal behavior." The Astra Defendants respond that applying the Petrobras Plaintiffs' "proposed policy exception" to *Schlumberger* does not "immunize" them from any criminal liability and instead would frustrate public policy.

After considering all the circumstances here, we already have concluded that the *Forest Oil* factors favor the enforceability of the reliance disclaimer. Moreover, careful application of the *Forest Oil* factors adequately protects the public policies at issue. Such analysis not only ensures that parties are protected "from unintentionally waiving a claim for fraud," *Italian Cowboy Partners, Ltd. v.*

29

*Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011), but also upholds and preserves the ability of "knowledgeable parties" advised by "knowledgeable counsel" to exercise their freedom of contract to enter "highly favored" settlement agreements and hold others to their word, *Forest Oil*, 268 S.W.3d at 60–61. We cannot conclude this case presents any "extreme circumstances" that preclude applying the *Schlumberger* doctrine.

We overrule the Petrobras Plaintiffs' third sub-issue.

Turning back to the Petrobras Plaintiffs' second sub-issue, because we already have concluded that the trial court properly granted the motions for summary judgment regarding their claims for common-law fraud, statutory fraud, and negligent misrepresentation based on the reliance disclaimer, certain claims also were properly barred because their predicate claims were rejected. So, because the Petrobras Plaintiffs' claims for declaratory judgment, unjust enrichment/money had and received, and civil conspiracy as to "other claims" were solely based on the Astra Defendants' alleged fraudulent conduct, the trial court properly granted the motions for summary judgment on those claims. Therefore, the trial court properly dismissed the Petrobras Plaintiffs' claims for declaratory relief, unjust enrichment/money had and received, and civil conspiracy as to "other claims."

However, we also already have concluded that the trial court erred in granting the motions for summary judgment on all the Petrobras Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and civil conspiracy as to breach of fiduciary duty, and in granting the summary-judgment motions on the Astra Defendants' counterclaims for declaratory judgment tied to those claims. Exemplary damages are available for breach of fiduciary duty. *See Manges v. Guerra*, 673 S.W.2d 180, 184–85 (Tex. 1984). In addition, a party who conspires in connection with a breach of fiduciary duty may be found jointly and severally liable

30

in appropriate circumstances. *Cf. ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 881 (Tex. 2010). Finally, trial courts have discretion to award attorney's fees and costs under the Uniform Declaratory Judgment Act (UDJA) to any party, whether that party prevailed or not, or was the plaintiff or defendant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009) ("[T]he Declaratory Judgments Act allows fee awards to either party in all cases."). Here, the Petrobras Plaintiffs did not limit their "claims" for exemplary damages, attorney's fees and costs, and joint-and-several liability of PHRP just to fraud. The Astra Defendants did not conclusively demonstrate that they were entitled to summary judgment as a matter of law on the Petrobras Plaintiffs' claims for exemplary damages, attorney's fees and costs, and joint-and-several liability of PHRP. Therefore, the trial court erred in granting the motions for summary on, and dismissing, those claims.

We sustain, in part, the Petrobras Plaintiffs' second sub-issue.

### c. Claims against individual Astra Defendants in their individual capacities

In their fourth sub-issue, the Petrobras Plaintiffs argue that the individual Astra Defendants were not entitled to summary judgment on tort claims alleged against them in their individual capacities as opposed to in their capacities as corporate representatives.[24] Again, we already have concluded that the trial court erred by granting the motions for summary judgment based on the release on all the

---

[24] The longstanding rule in Texas is that "a corporate agent is personally liable for his own fraudulent or tortious acts." *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002). If a corporate agent directs or participates in a tort during his employment, then he faces personal liability for the tortious act. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984). Accordingly, regardless of whether the individual Astra Defendants performed the alleged tortious acts as corporate agents, as a general matter, they can still face individual liability for those acts if they prove to be tortious. *See Miller*, 90 S.W.3d at 717–18; *Leyendecker*, 683 S.W.2d at 375.

Petrobras Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty, as well as their claims for exemplary damages, attorney's fees and costs, and joint-and-several liability of PHRP.

We also already have concluded that the reliance disclaimer in the 2012 Settlement was valid and enforceable to bar the reliance-based claims included in the Petrobras Plaintiffs' claims for common-law fraud, statutory fraud, and negligent misrepresentation, as well as the derivative claims of declaratory relief, unjust enrichment/money had and received, and civil conspiracy as to "other claims." Certainly, the disclaimer is enforceable by AOT, Astra GP, Astra TradeCo, Astra Oil, Astra Energy, PHRP, and Transcor Astra—all express parties to the 2012 Settlement Agreement. However, according to the Petrobras Plaintiffs, the reliance disclaimer only references the individual Astra Defendants "in their corporate or partnership capacities as agents of the parties to the Settlement Agreement" and therefore does not entitle them to summary judgment in their individual capacities.

A traditional motion for summary judgment must "stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 338, 341 (Tex. 1993) ("We conclude that grounds for summary judgment must be expressly presented in the summary judgment motion itself."); *see* Tex. R. Civ. P. 166a(c). Summary judgment cannot be granted, or affirmed, on grounds not presented in the motion. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002). For example, our court has held that the trial court erred in granting a motion for summary judgment when the motion addressed claims brought by the appellant in his individual capacity but did not address claims the appellant brought in his capacity as an independent co-executor on behalf of his parents' estates. *Guest v. Cochran*, 993 S.W.2d 397, 405–06 (Tex. App.—Houston

32

[14th Dist.] 1999, no pet.) ("Cochran simply cannot, *ex post facto*, legitimize a summary judgment based on a motion that failed to address the co-executor's causes of action. Our mandate is clear—we cannot affirm a summary judgment on a ground not included in the motion for summary judgment.").

The Astra Defendants do not dispute that the Petrobras Plaintiffs brought tort claims and claims derivative of those tort claims against the individual Astra Defendants in their individual capacities. However, in their motions for summary judgment, the Astra Defendants did not expressly present any ground or explain why as a matter of law the individual Astra Defendants personally should be extended the benefit of the reliance disclaimer.[25]

Under these circumstances, we sustain the Petrobras Plaintiffs' fourth sub-issue.

## 2. Declaratory judgment

Under the UDJA, "[a] person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). The UDJA "is remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id.* § 37.002(b). A contract may be construed either before or after a breach. *Id.* § 37.004(b). We review declaratory judgments under the same standards as other judgments and decrees. *Id.* § 37.010. We look to the

---

[25] Perhaps tellingly, in their response to this sub-issue, the Astra Defendants do not include any discussion of the reliance disclaimer. We further note in section 5.18 the parties to the 2012 Settlement agreed that "there are no third-party beneficiaries to this Settlement Agreement, and that the Parties have no intention of conferring third-party-beneficiary status on any person or entity through this Settlement Agreement."

procedure used to resolve the issue at trial to determine the standard of review on appeal. *See id.* Because the trial court determined the challenged declaratory-judgment issue through summary judgment, we review the propriety of the trial court's declarations under the same standards we apply to summary judgments. *Lidawi v. Progressive Cty. Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

In their second issue, the Petrobras Plaintiffs argue "the trial court erred in granting a declaratory judgment as to the effect of the Release on the Arbitration." The Petrobras Parties argue that the trial court cannot interfere with an arbitrator's jurisdiction; the effect of the release on the claims in the arbitration is a matter for the tribunal, not the trial court; any argument that the 2006 SPA's arbitration clause has been superseded fails; and in any event, the release is unenforceable because the 2012 Settlement was procured by fraud.

The Petrobras Plaintiffs alleged that the trial court had subject-matter jurisdiction over the dispute because the amount in controversy exceeded minimal jurisdictional limits. *See* Tex. Const. art. V, § 8; Tex. Gov't Code Ann. § 24.007. They alleged that the 2012 Settlement contains "an exclusive venue provision which provides that any lawsuit arising out of or related to the Settlement Agreement, or the transactions contemplated therein, must be filed in Harris County." In their declaratory-relief claims, the Petrobras Plaintiffs alleged that actual controversies existed regarding "the parties' respective rights, duties, and obligations under the Settlement Agreement" and sought declarations concerning the validity of the contract pursuant to the UDJA. In their declaratory-judgment counterclaims, the Astra Defendants likewise sought declarations concerning the validity and enforceability of the 2012 Settlement, including the release, and that it barred claims in the arbitration and other claims arising out of or related to the 2006 SPA. Texas

courts in declaratory-judgment actions regularly construe and determine the validity of contracts, including release provisions, and how they affect parties.[26]

We already have construed the unambiguous language of the release in concluding that the trial court erred in granting the motions for summary judgment on all the Petrobras Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy as to breach of fiduciary duty. The trial court erred in rendering a take-nothing judgment on and in issuing a declaration that the release bars all these claims. As discussed above, aside from the carve-out, the language of the general mutual release is broad, which is permissible so long as the release "mentions" the claim to be released. *Keck*, 20 S.W.3d at 698. The plain language is clearly intended to release "any and all claims, demands, and causes of action of whatever kind or character which the Petrobras Parties have, or may have in the future, based on any acts or omissions, which known or unknown, that may have occurred on or before the Effective Date, including without limitation . . . any claim arising out of or related to the 2006 SPA."

In their amended arbitration demand, which was attached to the Astra Defendants' amended summary-judgment motion, Petrobras America and Petrobras alleged that AOT and Astra Oil "engaged in bribery and corruption in connection with" the parties' 2006 SPA and brought multiple claims, including declaratory relief, aiding and abetting breach of fiduciary duty, unjust enrichment/money had and received, breach of contract, common-law fraud, statutory fraud, negligent misrepresentation, racketeering activity, exemplary damages, and attorney's fees,

---

[26] *See Garza v. Bunting*, No. 05-06-01307-CV, 2007 WL 1545937, at *4–8 (Tex. App.—Dallas May 30, 2007, no pet.) (mem. op.) (affirming summary judgment in declaratory-judgment action in which trial court construed unambiguous language of mutual release in settlement agreement to bar counterclaims); *Trinity Universal Ins. Co. v. Sweatt*, 978 S.W.2d 267, 271 (Tex. App.—Fort Worth 1998, no pet.) ("Construction and validity of contracts are the most obvious and common uses of the declaratory judgment action.").

costs, and expenses. All of these claims asserted in the arbitration demand fall within the subject matter of the general release, even narrowly construed. Stated another way, but for the existence of the 2006 SPA, Petrobras America and Petrobras would not be bringing these claims in an arbitration against AOT and Astra Oil. In addition, these claims do not fall within the carve-out of the release since they are not alleged to arise out of "the alleged breach, enforcement, or interpretation" of the 2012 Settlement.[27] We conclude that the claims asserted "in the ICDR Arbitration . . . styled *Petrobras America, Inc., et al. v. Astra Oil Trading NV, et al*[.], Cause No. 01-16-0003-1149" therefore were "mentioned" within the broad language of the mutual release and were properly barred.

The cases relied on by the Petrobras Plaintiffs for their argument that the trial court could not issue its declaratory judgment without interfering with the arbitrators' jurisdiction do not persuade us that the trial court erred. Those cases are distinguishable procedurally and factually; they involved whether a trial court should compel arbitration and stay trial proceedings of a case brought pursuant to an agreement containing an arbitration provision,[28] or confirm an arbitration award stemming from an agreement containing an arbitration provision.[29] Here, the parties

---

[27] In their amended arbitration demand, Petrobras America and Petrobras expressly disavowed that their arbitration claims based on the 2006 SPA had anything to do with the 2012 Settlement: "To be clear, Claimants are not asserting in this arbitration any claims that arise out of or relate to the Settlement Agreement. Instead, Claimants are parties to a separate lawsuit filed in Harris County, Texas, in which they are asserting their claims that arise out of or relate to the Settlement Agreement."

[28] *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum*, 666 S.W.2d 604 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *see also Metra United Escalante, L.P. v. Lynd Co.*, 158 S.W.3d 535 (Tex. App.—San Antonio 2004, no pet.) (discussing *Feldman/Matz*).

[29] *See Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

brought declaratory-judgment claims and requested the trial court interpret and either declare enforceable or invalidate a release in their settlement agreement that does not contain an arbitration agreement.[30]

Next, the Petrobras Plaintiffs contend that the trial court's declaration "infringed" on the tribunal's jurisdiction to determine the merits of the arbitration, specifically, the affirmative defense of release. However, the trial court did not make any declaration deciding any affirmative defense in the arbitration, but rather, after construing the 2012 Settlement's release and comparing it to the allegations brought in a demand by Petrobras America and Petrobras, the trial court declared that the release barred those claims.[31]

The Petrobras Plaintiffs also contend that any argument that the 2006 SPA's arbitration clause has been superseded fails. But the Astra Defendants did not make this argument on summary judgment, and the trial court did not issue any declaration that the 2006 SPA's arbitration agreement was revoked or superseded by the 2012 Settlement. Again, the request for declaratory judgment asked the trial court to construe and rule on whether the release in the 2012 Settlement was valid and barred claims as asserted in the arbitration, as opposed to the validity of any arbitration

---

[30] Indeed, no party submitted the 2006 SPA with, much less discussed the substance of the arbitration agreement in, their summary-judgment briefing. The Petrobras Plaintiffs' citations in their brief to the 2006 SPA are to an exhibit attached to their counsel's affidavit in opposition to AOT's and Astra Oil's motion for supplemental relief enforcing the judgment. We consider Petrobras America's and Petrobras's appeal from the trial court's decision to grant post-judgment supplemental relief below.

[31] Again, the Petrobras Plaintiffs point to procedurally- and factually-distinct cases. *In re Jindal Saw Ltd.*, 264 S.W.3d 755 (Tex. App.—Houston [1st Dist.] 2008), *subsequent mandamus proceeding*, 289 S.W.3d 827 (Tex. 2009), involved whether a trial court should compel arbitration pursuant to an agreement containing an arbitration agreement. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004), involved a federal district court's decision to grant an injunction under the federal All Writs Act to prevent the arbitration of claims, based on contracts involving arbitration agreements, which arbitration already had been compelled, after the plaintiffs subsequently dropped the arbitrable claims.

37

agreement or question of arbitrability.

Finally, we already have determined that, aside from those claims brought against the individual Astra Defendants in their individual capacities, the trial court properly granted the motions for summary judgment on the Petrobras Plaintiffs' fraud-based and solely derivative claims based on the reliance disclaimer. Therefore, we reject the Petrobras Plaintiffs' argument that the release is unenforceable because the 2012 Settlement was procured by fraud.

We overrule the Petrobras Plaintiffs' second issue.

### 3. Attorney's fees and costs

In their third and final issue in this appeal, the Petrobras Plaintiffs argue that the trial court erred in awarding attorney's fees and costs to the Astra Defendants (except Mueller and Burla) under UDJA section 37.009. In any proceeding under the UDJA, the court "may award costs and reasonable and necessary attorneys' fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. The UDJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Although we conclude that the trial court properly granted the motions for summary judgment on the Petrobras Plaintiffs' claims for declaratory relief, unjust enrichment/money had and received, common-law fraud, statutory fraud, negligent misrepresentation, and civil conspiracy as to "other claims," we conclude that the trial court erred in granting the motions on their claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy as to breach of fiduciary duty, exemplary damages, attorney's fees and costs, and joint-and-several liability of PRHP. We also conclude that the trial court erred in granting the summary-judgment motions on the

38

Petrobras Plaintiffs' claims of declaratory relief, unjust enrichment/money had and received, common-law fraud, statutory fraud, negligent misrepresentation, and civil conspiracy as to "other claims" against the individual Astra Defendants in their individual capacities. Although we conclude that the trial court properly granted the motions for summary judgment on the Astra Defendants' counterclaims for declaratory relief concerning the validity of the 2012 Settlement, including the release, and declaring that the release bars claims related to the 2006 SPA, including those in the arbitration, we conclude that the trial court erred with regard to declaring that the release bars "the claims asserted in this proceeding for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, and Civil Conspiracy–Breach of Fiduciary Duty." Because our disposition of this case on appeal substantially affects the trial court's judgment, reversal and remand is warranted so that the trial court can address what attorney's fees and costs, if any, should be awarded to the Astra Defendants (except Mueller and Burla) under the UDJA. *See Funes v. Villatoro*, 352 S.W.3d 200, 217 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

We therefore resolve the Petrobras Plaintiffs' third issue in their favor to this extent.[32]

## B. No. 14-18-00728-CV

After the trial court rendered its final judgment, AOT and Astra Oil filed a motion for supplemental relief enforcing the judgment. AOT and Astra Oil requested that Petrobras America and Petrobras be permanently enjoined from further pursuit of the arbitration. Petrobras America and Petrobras opposed this request.

---

[32] Because of our disposition of this issue, we do not address the Petrobras Plaintiffs' arguments concerning duplication of nonrecoverable fees, lack of segregation, and that a fee award is unjust. *See* Tex. R. App. P. 47.1.

The record does not indicate that the trial court held a hearing before granting AOT's and Astra Oil's motion and issuing a permanent anti-suit injunction. AOT and Astra Oil subsequently filed a motion to modify the injunction. After holding a hearing,[33] the trial court granted this motion and issued an amended injunction order, which permanently enjoined "Petrobras and its officers, employees, agents, representatives, attorneys and/or anyone acting in active concert or participation with Petrobras" from "continuing to pursue" the arbitration. It is from this amended permanent anti-suit injunction that Petrobras America and Petrobras appeal.

An anti-suit injunction is a unique and extraordinary remedy and will issue "only in very special circumstances." *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996) (per curiam) (citing *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex. 1986)).[34] The Supreme Court of Texas has identified those circumstances as: (1) addressing a threat to a court's jurisdiction; (2) preventing the evasion of important public policy; (3) preventing a multiplicity of suits; and (4) protecting a party from vexatious or harassing litigation. *Frost Nat'l Bank*, 315 S.W.3d at 512; *Golden Rule*, 925 S.W.2d at 651. An anti-suit injunction is a remedy to be employed "sparingly" and only in the most "compelling" circumstances when "clear equity

---

[33] The hearing also concerned AOT's and Astra Oil's motion to reconsider the request to stay the arbitration, Petrobras America's and Petrobras's motion to dismiss under the TCPA, and Petrobras America's and Petrobras's emergency motion to stay the original anti-suit injunction.

[34] We are confronted with a permanent anti-suit injunction that the trial court issued post judgment, not a pre-judgment temporary anti-suit injunction of the sort at issue in *Golden Rule*. However, all parties on appeal engage the presumption that (at the least) *Golden Rule* applies. *See Wyrick v. Bus. Bank of Tex., N.A.*, 577 S.W.3d 336, 356 & n.14 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The parties disagree over whether AOT and Astra Oil also had to establish the traditional factors for a permanent injunction. *See 1717 Bissonnet, LLC v. Loughhead*, 500 S.W.3d 488, 500 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("To obtain a permanent injunction, a party must ordinarily show (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law.").

demands" it and when required to prevent an "irreparable miscarriage of justice." *See Golden Rule*, 925 S.W.2d at 651; *Gannon*, 706 S.W.2d at 306–07. The party seeking the injunction bears the burden to demonstrate that a clear equity is present. *Christensen*, 719 S.W.2d at 163. We review a trial court's anti-suit injunction under an abuse-of-discretion standard. *Gannon*, 706 S.W.2d at 305; *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Petrobras America and Petrobras challenge the amended permanent anti-suit injunction in three issues:

1. The injunction against the arbitration proceeding should be vacated because the trial court did not have authority to interfere in the two-year-old arbitration proceeding.

2. The injunction against the arbitration should be vacated because Astra did not carry its burden to establish its entitlement to an anti-suit injunction.

3. The injunction against the arbitration should be vacated because the Amended Arbitration Injunction is legally deficient.

We conclude that issue two is dispositive.

Petrobras America and Petrobras argue that the trial court abused its discretion because AOT and Astra Oil did not establish the *Golden Rule* factors for an anti-suit injunction and the traditional elements required to show entitlement to a permanent injunction.[35] Petrobras America and Petrobras contend that "[t]hese elements 'must be established by competent evidence,' and the proof required 'may not be made by affidavit.'" They contend that AOT and Astra Oil "did not submit any 'competent evidence'" and "established none of the required elements."

"[A] trial court has no discretion to grant injunctive relief . . . without supporting evidence." *Operation Rescue-Nat'l v. Planned Parenthood of Hous. &*

---

[35] *See supra* note 34.

41

*Se. Tex.*, 975 S.W.2d 546, 560 & n.56 (Tex. 1998). An applicant for injunction must establish its probable right to recovery and a probable injury by competent evidence adduced at a hearing. *See Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 686 (Tex. 1968). A sworn petition is not evidence, nor can the proof required to support issuance of an injunction be made by affidavit absent agreement of the parties. *See id.* at 686–87.

The trial court in its amended permanent anti-suit injunction stated that it was granting AOT's and Astra Oil's motion after considering it and "the evidence submitted therewith." However, the record contains no competent evidence adduced at the hearing. AOT and Astra Oil did not present any sworn witnesses or introduce any exhibits into evidence at the August 17, 2018 hearing. Nor does the record reflect the parties agreed that AOT and Astra Oil could make their proof by affidavit.

AOT and Astra Oil respond that Petrobras America and Petrobras committed briefing waiver by not citing to the record. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We do not agree. Perhaps Petrobras America and Petrobras could have cited to the hearing transcript to show that it contained no adduced evidence. But AOT and Astra Oil do not dispute, and the record confirms, that there was no hearing on their original motion for supplemental relief enforcing judgment and that the trial court's hearing on their motion for amended permanent anti-suit injunction was nonevidentiary.

AOT and Astra Oil next argue that the trial court "was entitled to rely on the determinations embodied in the Final Judgment and the undisputed facts concerning the Arbitration." However, AOT and Astra Oil do not explain how, and we cannot conclude, the final judgment "embodied" any factual determinations regarding AOT's and Astra Oil's alleged entitlement to a permanent anti-suit injunction. In

addition, their cited cases do not control.[36]

We conclude that the trial court abused its discretion in issuing the amended permanent anti-suit injunction.[37] Because there was legally-insufficient evidence to support the trial court's amended permanent anti-suit injunction, we sustain Petrobras America and Petrobras's second issue in appellate case number 14-18-00728-CV.[38] Accordingly, we reverse the trial court's August 21, 2018 amended order granting supplemental relief enforcing judgment in the form of a permanent anti-suit injunction and render judgment that the order is dissolved.

## C. No. 14-18-00793-CV

This TCPA[39] appeal, *see* TCPA § 27.008, involves the same parties as appellate case number 14-18-00728-CV. On August 13, 2018, Petrobras America and Petrobras filed a motion to dismiss under the TCPA AOT's and Astra Oil's motion for supplemental relief enforcing judgment and motion for amended order in

---

[36] The trial court did not render the permanent anti-suit injunction based on the unobjected-to findings of a special master. *Cf. Kim v. Bd. of Trustees of Korean Christian Church of Hous.*, No. 01-08-00970-CV, 2010 WL 2220591, at *6–7 (Tex. App.—Houston [1st Dist.] June 3, 2010, pet. denied) (mem. op.) ("Because there were no disputed facts, we conclude the trial court did not abuse its discretion by issuing the permanent injunction without holding an evidentiary hearing."). Moreover, Petrobras America and Petrobras opposed AOT's and Astra Oil's request for a permanent anti-suit injunction and disputed that they could demonstrate facts entitling them to one. AOT's and Astra Oil's other cited case did not consider this precise issue, but rather disposed of a conclusory-summary-judgment-evidence argument on briefing waiver. *See Yazdchi v. Unauthorized Practice of Law Comm.*, No. 01-09-00065-CV, 2010 WL 2650563, at *3–4 (Tex. App.—Houston [1st Dist.] July 1, 2010, no pet.) (mem. op.).

[37] *See Millwrights*, 433 S.W.2d at 687; *Ron v. Ron*, No. 14-18-00710-CV, 2020 WL 3467301, at *4 (Tex. App.—Houston [14th Dist.] June 25, 2020, no pet. h.) (citing *Millwrights* and concluding that trial court abused its discretion in issuing anti-suit injunction); *Shamoun & Norman, LLP v. Yarto Int'l Grp., LP*, 398 S.W.3d 272, 284 (Tex. App.—Corpus Christi 2012, pet. dism'd) (op. on reh'g) (same).

[38] Because we conclude that the trial court abused its discretion in issuing the amended permanent anti-suit injunction and reverse and render based on this issue, we do not address Petrobras America's and Petrobras's other two issues. *See* Tex. R. App. P. 47.1.

[39] *See supra* note 3.

the form of an anti-suit injunction. *See id.* § 27.003. Petrobras America and Petrobras argued that AOT's and Astra Oil's motions were "legal actions" based on, related to, or in response to communications made by Petrobras America and Petrobras in the course of the arbitration—their "right to petition." Petrobras America and Petrobras requested dismissal unless AOT and Astra Oil established by clear and specific evidence a prima facie case on each essential element of their claims for injunctive relief.

AOT and Astra Oil responded that the TCPA was not applicable because it was intended to protect against meritless legal actions in retaliation for a party's exercising its First Amendment rights, Astra's post-judgment requests for an anti-suit injunction were not "legal actions" within the meaning of the TCPA, and Petrobras America's and Petrobras's post-judgment motion was frivolous and untimely. After holding a hearing,[40] the trial court, without providing its reasoning, signed an order on August 28, 2018, denying Petrobras America's and Petrobras's motion to dismiss under the TCPA.[41]

The TCPA provides a procedure for dismissing meritless suits that are based on the defendant's exercise of the rights of free speech, petition, or association as defined in the statute. *See id.* Under the TCPA, "[i]f a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." *Id.* § 27.003(a). In pertinent part, the TCPA defines the "exercise of the right to petition" as "a communication in or pertaining to . . . an official proceeding, other than a judicial proceeding, to administer the law." *Id.* § 27.001(4)(A)(ii). The TCPA

---

[40] *See supra* note 33.

[41] In this order, the trial court also denied AOT's and Astra Oil's request for court costs and reasonable attorney's fees. AOT and Astra Oil did not appeal the order.

defines a "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). A defendant wanting to take advantage of the statute must file a timely motion: "A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action. The court may extend the time to file a motion under this section on a showing of good cause." *Id.* § 27.003(b).

We review the trial court's denial of Petrobras America's and Petrobras's motion to dismiss de novo. *See Rehak Creative Servs. v. Witt*, 404 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.], no pet.), *disapproved on other grounds by In re Lipsky*, 460 S.W.3d 579 (Tex. 2015). In doing so, we "make[] an independent determination and appl[y] the same standard used by the trial court in the first instance." *Id.* at 726. Application of this standard usually involves a "two-step" analysis in which we determine (1) whether the defendant has shown, by a preponderance of the evidence, that the plaintiff's legal action is based on, relates to, or is in response to the defendant's exercise of the right of free speech, to petition, or of association; and if so, (2) whether the plaintiff has shown, by clear and specific evidence, a prima facie case for each essential element of the claim in question. *Lipsky*, 460 S.W.3d at 586–87 (citing TCPA § 27.005(b), (c)).

On appeal, Petrobras America and Petrobras argue in their first issue that they met their burden to prove the TCPA applied because AOT's and Astra Oil's "requests for injunctive relief were 'legal actions . . . based on, relate[d] to, or . . . in response to' [Petrobras America's and] Petrobras's exercise of [their] right to petition."[42] They further contend in their second issue that AOT and Astra Oil "failed

---

[42] The portion of the statute's definition of "legal action" relied on by Petrobras America and Petrobras is the catch-all provision, which includes "any other judicial pleading or filing that

45

to present a prima facie case on each element of [their] claim[s] and thus the trial court erred in refusing to dismiss [AOT's and] Astra [Oil]'s requests for injunctive relief."

Because it is dispositive, we first address AOT's and Astra Oil's contention that the trial court did not err in denying Petrobras America's and Petrobras's TCPA motion to dismiss because it was untimely filed.[43] AOT and Astra Oil argue that even if their post-judgment request for an anti-suit injunction constituted a "legal action," it "did not add a new claim or seek new relief beyond what had already been requested" as "first asserted in Astra's 2016 filings" and thus "was not a 'legal action' that would reset the long-passed 60-day statutory deadline for a TCPA motion to dismiss." We agree.[44]

One of the overarching purposes of the TCPA is to provide an expedited dismissal procedure for lawsuits that are based on, related to, or in response to the exercise of certain statutorily-protected rights. *See, e.g.*, *id.* at 586 ("The Act

---

requests legal or equitable relief." TCPA § 27.001(6).

[43] We disagree with Petrobras America's and Petrobras's contention in their reply brief that AOT and Astra Oil only raise timeliness for the first time on appeal and thus waived the issue. AOT and Astra Oil raised timeliness in their response: "Had Petrobras actually believed that its right to pursue the Arbitration was a First Amendment right and a stay of the Arbitration justified an anti-SLAPP motion, the time to have challenged that was prior to the entry of the Final Judgment, which declared that Petrobras' Arbitration claims were barred, or prior to the entry of the Order, which enforced the Final Judgment by staying the Arbitration." And the record of the hearing reflects that Petrobras America and Petrobras addressed the "timing issue." We further disagree that by "effectively conceding" timeliness, AOT and Astra Oil "denied" Petrobras America and Petrobras the opportunity to argue good cause for an extension under section 27.003(b).

[44] In our analysis, we assume without deciding that exercising the right to petition could include communications in an arbitration proceeding. We further assume without deciding that a post-judgment request for anti-suit injunctive relief could qualify as a "legal action" under the applicable 2013 version of the TCPA. However, we note under the 2019 version of the TCPA, the definition of "legal action" expressly excludes "post-judgment enforcement actions." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6)(C).

46

provides a special procedure for the expedited dismissal of such suits [that fall within the TCPA's purview]."); *Jordan v. Hall*, 510 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist. 2016, no pet.) (noting that it is "well settled" that purpose of TCPA is to allow defendant "early in the lawsuit" to seek dismissal of claims that implicate certain protected rights (citing *Paulsen v. Yarrell*, 455 S.W.3d 192, 197 (Tex. App.—Houston [1st Dist.] 2014, no pet.))); *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 193 (Tex. App.—El Paso 2014, no pet.) ("It is evident that the Legislature intended to effectuate the purpose of the TCPA by ensuring that courts will dismiss SLAPP suits quickly and without the need for prolonged and costly proceedings."). Thus, Petrobras America's and Petrobras's motion to dismiss under the TCPA needed to be filed not later than the 60th day after the date of service of AOT's and Astra Oil's "legal action" that was "based on, relate[d] to, or [was] in response to" such pursuit of arbitration. *See* TCPA § 27.003. But Petrobras America and Petrobras did not file their motion to dismiss under the TCPA until approximately two years after AOT and Astra Oil filed their initial "legal action" in response to Petrobras America's and Petrobras's exercise of their right to petition in the arbitration.

Here, the record reflects that Petrobras America and Petrobras filed their original demand for arbitration on July 29, 2016. In both AOT's and Astra Oil's original and first amended counterclaims, filed and served on August 8 and August 24, 2016, respectively, they sought a declaration that the 2012 Settlement was "valid, binding and enforceable . . . including . . . a declaration that the Release given by the 'Petrobras Parties' in Section 5.11 . . . is enforceable and binding and bars the claims sought to be asserted in the Demand and any other claims arising out of or related to the 2006 SPA."[45] In their motion to stay the arbitration, filed and served September

---

[45] In August 2016, AOT and Astra Oil also brought breach-of-contract counterclaims

1, 2016, AOT and Astra Oil similarly alleged that section 5.11 of the 2012 Settlement "precludes . . . the substantive claims that Petrobras seeks to make in the Arbitration." In part, because "Petrobras has released all of its substantive claims relating to the 2006 SPA, which necessarily constitutes a release of any right to arbitrate any of the released claims," AOT and Astra Oil requested that the trial court "permanently stay the Arbitration."

As discussed above, AOT and Astra also successfully moved for summary judgment on this portion of their declaratory-judgment counterclaims. The trial court's final judgment, signed June 12, 2018, expressly included a declaration that the section-5.11 release was "valid, enforceable and binding" and "bars . . . the claims sought to be asserted by Petrobras in the ICDR Arbitration commenced by Petrobras and styled *Petrobras America, Inc., et al. v. Astra Oil Trading NV, et al[.]*, Cause No. 01-16-0003-1149." In their motion for supplemental relief enforcing the judgment in the form of an anti-suit injunction, filed and served July 10, 2018, AOT and Astra Oil sought to restrain Petrobras America and Petrobras "from continuing to pursue [their] released claims in the Arbitration." In their motion for an amended order, filed and served August 9, 2018, AOT and Astra Oil continued to request that the arbitration come to a "complete stop."

Petrobras America and Petrobras argue that the "very basis" for AOT's and Astra Oil's post-judgment requests for anti-suit injunctive relief involved "new claims" and "new facts." But an amended pleading that does not add new parties or claims does not restart the deadline for filing a motion to dismiss under the TCPA. *Paulsen*, 455 S.W.3d at 197; *see Bacharach v. Garcia*, 485 S.W.3d 600, 602–03 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Only an amended petition asserting

directed at Petrobras America's and Petrobras' pursuit of arbitration, which they dismissed. *See supra* note 5.

claims based upon new factual allegations may reset a TCPA deadline as to the newly added substance. *Jordan*, 510 S.W.3d at 198.

Under these circumstances, we cannot conclude that the Astra Defendants' post-judgment request seeking an anti-suit injunction to enforce an underlying declaratory judgment amounts to bringing a new claim for purposes of resetting the TCPA clock.[46] From the time Petrobras America and Petrobras filed their original demand for arbitration in July 2016, they pursued their right to petition through communications in the arbitration. From the time AOT and Astra Oil filed their declaratory-judgment counterclaims in August 2016, to when they moved to stay the arbitration in September 2016, to when they sought to enforce the trial court's final declaratory judgment based on such counterclaims through a post-judgment permanent anti-suit injunction as late as July and August 2018, they alleged and argued that Petrobras America's and Petrobras's pursuit of the arbitration was released, barred, and should not continue. While AOT's and Astra Oil's motions for supplemental relief enforcing the judgment in the form of an anti-suit injunction may have alleged additional facts concerning Petrobras America's and Petrobras's most recent communications in the arbitration, the substantive allegation underlying their motions was the same as their previous filings—that Petrobras America's and

---

[46] We disagree with Petrobras America and Petrobras's position in its reply brief that just because this court held they had an adequate remedy by appeal from the trial court's permanent anti-suit injunction, *see In re Petrobras Am. Inc.*, No. 14-18-00801-CV, 2018 WL 4700043, at *2 (Tex. App.—Houston [14th Dist.] Sept. 25, 2018, orig. proceeding) (mem. op.) (per curiam), that we already rejected any argument that AOT's and Astra Oil's request for such injunctive relief did not qualify as a claim. Nor do we find their cited cases controlling under these circumstances. *See Hicks v. Group & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 527 (Tex. App.—Corpus Christi 2015, no pet.) (TCPA motion was timely as to new claims when plaintiff in amended petition added "new claims . . . for conspiracy and joint enterprise and coercion of a public servant"); *James v. Calkins*, 446 S.W.3d 135, 146 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("[T]he amended petition . . . included substantively different factual allegations, and all of the causes of action alleged in the amended petition were new causes of action.").

Petrobras's pursuit of arbitration should be barred by the 2012 Settlement's release.[47]

We therefore conclude there is no compelling basis or reason to reset the TCPA clock. This result comports with the legislative intent that suits be dismissed under the TCPA, if at all, early in the litigation. It does not unduly restrict the rights of either the plaintiffs or the defendants. Finally, it preserves the 60-day deadline mandated by the legislature. Because we conclude that Petrobras America's and Petrobras's TCPA motion to dismiss AOT's and Astra Oil's motions for supplemental relief enforcing judgment in the form of an anti-suit injunction was not timely filed, we need not proceed in the TCPA analysis. *See* Tex. R. App. P. 47.1; *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 WL 4739438, at *6 (Tex. App.—San Antonio Sept. 30, 2019, no pet.) (mem. op.).

Accordingly, we conclude that the trial court did not err by denying Petrobras America's and Petrobras's TCPA motion to dismiss. We therefore affirm the trial court's August 28, 2018 amended order denying Petrobras America's and Petrobras's motion to dismiss under the TCPA.

### III.   CONCLUSION

In appellate case number 14-18-00728-CV, we reverse the trial court's August 21, 2018 amended order granting supplemental relief to AOT and Astra Oil enforcing the judgment in the form of a permanent anti-suit injunction and render judgment that the order is dissolved.

In appellate case number 14-18-00793-CV, we affirm the trial court's August

---

[47] *See Mancilla v. Taxfree Shopping, Ltd*, No. 05-18-00136-CV, 2018 WL 6850951, at *4 (Tex. App.—Dallas Nov. 16, 2018, no pet.) (mem. op.) ("But the restrictions on communications and association sought by TFS in the second amended petition were identical or similar to the restrictions it sought in the original petition. Thus, appellants' alleged need for protection under the TCPA motion was apparent as of the original petition.").

28, 2018 amended order denying Petrobras America's and Petrobras's TCPA motion to dismiss.

In appellate case number 14-18-00798-CV, we reverse the trial court's June 12, 2018 final judgment. While this court is authorized to render the judgment that the trial court should have rendered, under circumstances when remand is necessary for additional proceedings and for efficiency's sake, we remand with instructions for the trial court to render partial summary judgment in accordance with our judgment and conduct such additional proceedings. *See* Tex. R. App. P. 43.2, 43.3.


/s/    Charles A. Spain
Justice


Panel consists of Justices Christopher, Spain, and Poissant.